## LIVERMORE v. TRUESDELL, ASSIGNEE, ET AL.

1. APPELLATE PRACTICE—BILL OF EXCEPTIONS.
Unless the evidence has been brought into the record by bill of exceptions, duly authenticated, the judgment cannot be reversed on the ground of insufficiency of the evidence to justify it.
2. PROMISSORY NOTES—PAYMENT.
L. borrowed a sum of money on a note which he signed and to which he also signed the name of a firm of which he was a member, and put the money into the firm's business. He afterwards paid the note, but requested the payees to hold it for collection (for his use)

as a claim against the firm from its assignee for the benefit of creditors. *Held*, that the note, having been paid, was not so enforcible.

*Appeal from the District Court of Arapahoe County.*

Messrs. WOLCOTT & VAILE, for appellant.

Mr. OLIVER B. LIDDELL and Mr. THOMAS WARD, JR., of counsel, for appellees.

BISSELL, J., delivered the opinion of the court.

This is one of the proceedings which grew out of an assignment for the benefit of creditors by the firm of Livermore & Mayne to Truesdell. The firm was established early in 1891, to carry on the business of dealers in lumber and building materials, and continued as such until the summer of 1893. It was organized under written articles, concerning which we need only state they provided that the capital was to be first contributed by Mayne, Livermore putting in his knowledge and experience. Mayne was to put in certain merchandise and cash, amounting to $2,690.12. Livermore was to be responsible for one half of this sum. It was to be paid in one of two ways: either out of the profits realized from the business, if any should accrue and be divided, or in case there was no division prior to the expiration of the copartnership, it should be repaid out of the assets before there should be any division of either the stock in trade or the profits. When the firm went into liquidation in the summer of 1893 and made the assignment to Truesdell, they had considerable stock on hand and a large number of book accounts. Truesdell, under his authority and the direction of the court, for it was a statutory assignment, proceeded to wind up the business. After he had paid all the expenses of his trust and the debts of the firm, there was some $800 left. Mayne filed a petition in the district court for an order on the assignee to pay that sum over to him. Truesdell

made a complete showing of all his doings in the premises, rendered an account of moneys collected and paid out, petitioned for his final discharge, and the court ultimately rendered judgment directing him to pay this sum to Mayne and discharging him from the obligations of his trust, and releasing his bondsmen. Truesdell is not complaining, but Livermore attempts to prosecute an appeal from the order and insists the money ought to have been paid to The Silver State Building & Loan Association in liquidation of what he claimed to be a debt contracted with that corporation for the benefit of the firm, and which ought to be paid out of this $800 before any money should be paid to Mayne. It is probably quite unnecessary to discuss this question. It is almost wholly a question of fact. The court found against Livermore, on whose suggestion the appeal must be prosecuted. We are of the opinion he is not entitled to ask us to review this finding. We have examined the record. It shows a hearing on Mayne's petition for the payment of the remaining assets to him and a bill of exceptions attempted to be preserved showing the testimony that was produced, the court's judgment and the resulting error. At the further hearing on Truesdell's petition to be discharged, there was likewise a hearing and a showing of the accounts, and a judgment and order entered, and a bill of exceptions attempted to be preserved whereon to base error respecting the court's order directing the money to be paid to Mayne. We find that those bills of exception were tendered to the court for signature on a date named, and a notation made that they were tendered. There is no signature, however, to the original bill, and there is no proof, such as the decisions in this state require, that the evidence has been preserved by a bill duly authenticated by the signature of the judge and his seal. We are quite unable to see how we can accept the bills in this form, treat them as having been properly authenticated, and reverse the case because the evidence was insufficient to justify the judgment. We are very frank, however, to say that, notwithstanding this apparent irregularity, and

to discover whether the case would justify a different result, and whether it would lead us to call on counsel to make any suggestions respecting this deficiency, we examined the entire record. We looked at the testimony and we entirely agree with the trial court in its conclusions. We do not regard the questions raised as questions of law at all. There would be a question of law in the case if the court should find the facts one way rather than the other, but so long as we accept the court's conclusions and deem them justified, there remains no question of law to consider or determine. We will very briefly suggest the point in the controversy and the basis of the appellant's contention. At some time during the continuance of the firm Livermore went to the Loan Association and borrowed $700 on a note, which he signed, and to which he also affixed the firm name, and turned it into the firm to aid it at a time of an apparent financial embarrassment. The money was not paid in liquidation of any claim which Mayne might have against Livermore for his part of the original capital, but was turned in generally as any partner might put money into a concern in which he was interested to further its interests. The money passed into the general firm account and became in law part of its assets. It must be remembered that in this contention Livermore is not attempting to compel the assignee to pay him the money except indirectly. After this money was borrowed Livermore went again to the Loan Association to find out the difference between the value of his stock and the amount of money which he had borrowed. The value of the stock was computed by the secretary of the association, and it was found to be $291 beyond the sum originally loaned. This money was paid over to him and his stock account closed with the association. Livermore evidently did not desire to take up the note which bore the firm name, and there was some kind of an arrangement between the association and Livermore, which amounted substantially to this: The association drew its check and gave it to Livermore. He thereupon turned the check back into the com-

pany, which passed it to their own credit, and it went into their bank account and general capital fund. The note was not surrendered, nor did Livermore ask the association to deliver up the paper. Taking the advice of the company's counsel, he told the association to hold the note and see if they could not file it as a claim against the firm in the hands of the assignee, and collect the amount of the note. In this way Livermore hoped apparently to realize the $700 which he had turned in. On the hearing, much testimony was given by the officers of the association, the attorney who carried out the transaction, and Livermore himself, and it was insisted the note had not been paid, but that the association had a right to file it as a claim and collect it from the firm. The court held, and we think properly, that in reality the note was paid and the association no longer had a claim against either Livermore or the firm on the note which was thus liquidated. The association took the check and the note was treated as paid; the stock account was closed, the stock surrendered, and they certainly had no claim against Livermore or Livermore & Mayne for the repayment of the money. The loan was paid in two ways: first, by the cancellation of the stock; and, second, by a check for the difference in the money. When these two things had been done, the association had no claim on anybody for the money which it had advanced. The note, if it had any legal existence thereafter, belonged to Livermore, who alone could assert a claim against the assignee for its repayment. This he never attempted to do, nor does he attempt now to do it, except indirectly, by using the association as an apparent holder of the paper with a right to collect as against his copartner Mayne. We are of the opinion the court correctly adjudged the note paid and the association without right to enforce it.

This disposes of the only question involved, except Mayne's right to the $800. According to the articles of copartnership Livermore owed the firm $1,345, which was payable out of the assets of the firm before he could receive any part or portion of either profits or assets. This was the contract.

The assets are admitted to be only $800 after the payment of debts, and certainly as to those assets, one half of them belong to Mayne, and only one half could ever come to Livermore. If this be true then, he still owed $945, which was his part of the original contribution to the capital fund, to the payment of which out of the firm's assets he must consent before he can receive anything. If this be true, even though we should concede that the $700 which he put into the firm was to be repaid him before he was bound to contribute any part of the $1,345, yet he would still owe $945, and the $700 which he contributed would not be enough to liquidate a debt from which he could not escape. For these reasons, we are not inclined to regard Livermore's position as one resting upon equitable considerations, or that we should be astute to find reasons to enable him to receive what he could not become entitled to until after he had paid his part of the original capital. We think the court was entirely right in its conclusions. The order to pay over the $800 to Mayne was the only order which could be legitimately made under the testimony. If the question had been fairly preserved and fully presented, we should be unable to discover any reason deducible from the evidence or furnished by the law which would justify us in overturning the judgments which the court entered.

As we said at the outset, we do not regard these questions as legitimately presented, but, in order to save any further continuance of the litigation, we have frankly expressed our views and have stated what our conclusions would be on a full consideration of the whole record duly preserved.

We therefore find no error in the record and accordingly affirm the judgment.

*Affirmed.*